UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**HOWARD BLOOMGARDEN,**             )
                                    )
    **Plaintiff,**               )
                                    )
    v.                          )   Civil Action No. 12-0843 (ESH)
                                    )
**UNITED STATES DEPARTMENT**        )
**OF JUSTICE,**                     )
                                    )
    **Defendant.**               )
_____ )

## MEMORANDUM OPINION

Plaintiff Howard Bloomgarden has sued the Department of Justice ("DOJ") to compel the production of records by the Executive Office for United States Attorneys ("EOUSA") under the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552, *et seq*. (Amend. Compl., Nov. 9, 2012 [ECF No. 11].) The defendant alleges that after a diligent search no responsive records were found. Defendant now moves for summary judgment (Def.'s Mot. for Summ. J., Sept. 4, 2014 [ECF No. 23] ("Mot.").) For the reasons stated below, defendant's motion will be granted.

### BACKGROUND

Plaintiff is currently incarcerated in Los Angeles, California, awaiting trial in a capital case. (Bloomgarden Decl., Oct. 9, 2013 [ECF No. 26-3], at ¶ 2.) In preparation of his defense, he has sought to acquire documents from the United States Attorney's Office for the Eastern District of New York ("USAO-EDNY") regarding the termination of former Assistant United States Attorney ("AUSA") Raymond Granger.[1] (Pltf.'s Stat. of Pts. & Auth. in Support of His

---

[1] The EOUSA provides administrative support to the United States Attorney's Offices, including the coordination of responses to FOIA requests.

Opp. to Def.'s Mot. for Summ. J., Oct. 9, 2013 [ECF No. 26-2] ("Opp."), 2.) According to plaintiff, these documents may contain evidence that while Mr. Granger was an AUSA, he signed agreements with plaintiff's former counsel on behalf of California authorities without their authorization, which could potentially constitute prosecutorial misconduct. (*Id.*) In addition, plaintiff believes that AUSA Granger was terminated in part because he made anti-semitic remarks. As the plaintiff is Jewish, he believes that Granger's anti-semitic views may have played a role in the current prosecution against him. (*Id.*)

Plaintiff filed two FOIA requests seeking information related to AUSA Granger's termination. On January 6, 2012, Clark Arwine (a paralegal working with the plaintiff) sent an electronic FOIA request ("the First Request") to the EOUSA seeking "a 35-page termination letter regarding a former AUSA, Raymond R. Granger, dated approximately October, 1996" and "seven binders of exhibits that pertain to the letter." (Mot., Ex. A.) After receiving no response from the EOUSA, plaintiff filed a complaint on May 24, 2012, in order to compel the production of these documents. (Compl. [ECF No. 1].) On June 26, 2012, the EOUSA notified plaintiff by letter that his FOIA request had been received and that it had been split into two requests—one for case files and the other for personnel records. (Luczynski Decl., Sept. 4, 2013 [ECF No. 23-2], at ¶¶ 5-7; Mot., Ex. D.)

Despite this reply, plaintiff filed another FOIA request on July 10, 2012 ("the Second Request"). (Mot., Ex. F.) In it, he sought the same information as the First Request, as well as "[a]ll court transcripts and audio/video recordings related to the aforementioned termination of AUSA Granger, and any records of same that relate to claims of discrimination involving the Jews by former AUSA Granger." (Luczynski Decl. at ¶ 10; Mot., Ex. F.) On August 8, 2012, the EOUSA sent plaintiff a letter stating that a search for records located in the EOUSA's personnel

department had revealed no responsive documents.[2] (Luczynski Decl. at ¶ 8; Mot., Ex. E.) On September 24, 2013, the EOUSA informed plaintiff that a similar search of other USAO-EDNY records also revealed no responsive documents. (Luczynski Decl. at ¶ 6; Mot., Ex. C.)

On September 25, 2012, defendant claims that it sent plaintiff a letter informing him that no responsive records had been found regarding his Second Request.[3] (Luczynski Decl. at ¶ 12; Mot., Ex. H.) The most recent mailing address the EOUSA had on file for plaintiff was the address of his attorney in his capital case, Mr. James Earley. The EOUSA therefore sent the letter to plaintiff, care of Mr. Earley, in accordance with its policy of using the most recent address on file to respond to FOIA requests. (Supp. Luczynski Decl., Nov. 26, 2013 [ECF No. 29-2], at ¶ 4.) However, plaintiff alleges in a sworn declaration that he never received this letter. (Bloomgarden Decl. at ¶ 8.) Therefore, because in plaintiff's view the EOUSA had responded to his First Request but had not yet responded to his Second Request, he amended his complaint on November 9, 2012, to challenge only that the "EOUSA had not responded to [the July 10, 2012] request." (Amend. Compl. at 2.)

During the pendency of this litigation, the EOUSA extended its search for responsive records beyond the USAO-EDNY by requesting responsive documents from the National Personnel Records Center ("NPRC") where the "Official Personnel Folders" (OPFs) are stored after an employee leaves the government or is terminated. (*See* Cook Decl., Sept. 4, 2013 [ECF No. 23-3], at ¶¶ 2-3.) NPRC was able to locate AUSA Granger's OPF and provided it to the EOUSA FOIA office for review. (*Id.* at ¶ 6.) On June 6, 2013, defendant informed plaintiff by

---

[2] Because the EOUSA employs a first-in, first-out policy when considering FOIA requests, it replied to the First Request before replying to the Second Request. (*See* Mot., Ex. B.)

[3] As defendant explains, it was able to respond quickly to plaintiff's Second Request because "[b]oth requests sought information regarding the termination of [AUSA] Granger." (*See* Mot. at 8.)

3

letter that no documents responsive to his request appeared in this file. According to a page-by-page review by the EOUSA, the 40-50 page OPF did not "contain a termination letter of any length, and it [did] not contain any binders whatsoever, of exhibits, or otherwise, including transcripts and recordings." (Supp. Luczyski Decl. at ¶ 6.) Following the NPRC review, the EOUSA further expanded its search by forwarding plaintiff's request to the Merit Systems Protection Board ("MSPB") under the theory that "they m[ight] be better equipped to answer plaintiff's request." (Luczyski Decl. at ¶ 13; Mot., Ex. G.) To the Court's knowledge, the MSPB has not yet responded to the EOUSA's request.

## ANALYSIS

### I. LEGAL STANDARD

Summary judgment is appropriate if the pleadings and evidence on file show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). "In a FOIA case, summary judgment may be granted to the government if 'the agency proves that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester.'" *Fischer v. Dep't of Justice,* 596 F. Supp. 2d 34, 42 (D.D.C. 2009) (quoting *Greenberg v. U.S. Dep't of Treasury,* 10 F. Supp. 2d 3, 11 (D.D.C. 1998)). The requester may challenge such a showing by "set[ting] forth specific facts showing that there is a genuine issue for trial," Fed. R. Civ. P. 56(e), that would permit a reasonable jury to find in his favor. *Laningham v. U.S. Navy,* 813 F.2d 1236, 1241 (D.C. Cir. 1987). Agency declarations "are afforded a presumption of good faith;" and therefore an adequate affidavit "can be rebutted only 'with evidence that the agency's search was not made in good faith.'" *Defenders of Wildlife v. U.S. Dep't of Interior,* 314 F. Supp. 2d 1, 8 (D.D.C. 2004).

However, "if the sufficiency of the agency's identification or retrieval procedure is genuinely in issue, summary judgment is not in order." *Weisberg v. U.S. Dep't of Justice,* 627 F.2d 365, 370 (D.C. Cir. 1980).

## II. EXHAUSTION REQUIREMENT

"Exhaustion of administrative remedies is generally required before filing suit in federal court [under FOIA] so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Oglesby v. Dep't of the Army,* 920 F.2d 57, 61 (D.C. Cir. 1990); *see also Wilbur v. CIA,* 355 F.3d 675, 676 (D.C. Cir. 2004). "The statutory scheme in the FOIA specifically provides for an administrative appeal process following an agency's denial of a FOIA request," and "courts have consistently confirmed that the FOIA requires exhaustion of this appeal process before an individual may seek relief in the courts." *Oglesby,* 920 F.2d at 61-62 (citing 5 U.S.C. § 552(a)(6)(A)(i), (ii) and cases). Exhaustion under FOIA is not jurisdictional but "as a jurisprudential doctrine, [the requester's] failure to exhaust precludes judicial review" if a merits determination would undermine the purpose of permitting an agency to review its determinations in the first instance. *Hidalgo v. FBI,* 344 F.3d 1256, 1258-59 (D.C. Cir. 2003).

In support of its motion to dismiss, defendant alleges that on September 25, 2012, it sent a letter to plaintiff responding to his July 10, 2012 FOIA request. (*See* Lucyzynski Decl. at ¶ 12; Mot., Ex. H.) In support of its position, defendant provides the Court with a dated copy of the letter, which it alleges was sent to plaintiff, care of his attorney Mr. Earley. (Mot., Ex. H.) According to defendant, the letter was sent to Mr. Earley in accordance with the EOUSA's policy of sending FOIA replies to the most recent address on file. The Court does not question the veracity of defendant's claim that "[a] letter is only signed and dated when it is ready to be

sent out [and t]he date on the face of the letter is EOUSA's method of identifying documents already sent, and it is the exact date when the documents leave EOUSA's office." (Supp. Luczynski Decl. at ¶ 5.) However, the central question at issue here is not the date on which the defendant mailed the letter, but rather the date on which plaintiff received it, if ever. *See Jones v. U.S. Dep't of Justice*, 576 F. Supp. 2d 64, 67 (D.D.C. 2008) ("The existence of a letter, of course, does not establish . . . [that it was] actually received by the intended recipient.")

If plaintiff did receive this letter prior to filing his amended complaint on November 9, 2012, the Court would have no choice but to dismiss the case for failure to exhaust available administrative remedies. However, "if [defendant] did not *receive* a response [to his FOIA request within the statutory period], then by operation of statute, he constructively exhausted his administrative requirements." *Id.* (citing 5 U.S.C. § 552(a)(6)(C)(i)) (emphasis added)). Just as in *Jones*, the plaintiff in this case filed both a complaint and a declaration (under the penalty of perjury) stating that he never received a response from defendant. Therefore, because "[i]t cannot be said that the evidence 'is so one-sided that one party must prevail as a matter of law,'" a disputed issue of material fact exists and the Court will not grant defendant's motion for summary judgment on exhaustion grounds. *See id.* (citing *Liberty Lobby,* 477 U.S. at 252).

### III. THE ADEQUACY OF THE SEARCH

As to the merits, defendant argues that it conducted an adequate search for responsive records and that it therefore is entitled to summary judgment. The Court agrees. "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State,* 897 F.2d 540, 542 (D.C. Cir. 1990)). Under this standard, the relevant question "is not whether there might exist

6

any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*" under the particular circumstances of the case. *Weisberg*, 745 F.2d at 1485 (emphasis in original).

In order to meet this burden, the agency need not "set forth with meticulous documentation the details of an epic search for the requested records." *Perry v. Block,* 684 F.2d 121, 127 (D.C. Cir. 1982). However, it must provide a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched." *Oglesby*, 920 F.2d at 68. These affidavits are "accorded a presumption of good faith." *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). However, if "the record leaves substantial doubt as to the sufficiency of the search summary judgment for the agency is not proper." *Truitt*, 897 F.2d at 542.

Defendant provides five such sworn declarations from three government employees detailing their search for responsive documents. These declarations are sufficiently detailed and non-conclusory. *See Weisberg*, 705 F.2d at 1351. The Court therefore must presume that they were submitted in good faith. *SafeCard,* 926 F.2d at 1200. Plaintiff nevertheless challenges the adequacy of the search as described in these declarations on the grounds that (1) the scope was not sufficiently broad and (2) it failed to identify responsive documents that plaintiff knows exist (or, at the very least, should exist). (*See* Opp. at 5-7.)

First, regarding the scope of the search, plaintiff argues that the EOUSA impermissibly limited its inquiry by only "speaking with . . . human resource officer[s]" and abandoning the search of the USAO-EDNY litigation databases prematurely. (*Id.* at 6.) In response, defendant argues that the EOUSA conducted a targeted search for personnel documents that was reasonable in light of the narrow nature of plaintiff's request that focused exclusively on the termination of

7

AUSA Granger in 1996. (*See* Mot. at 8; Henriquez Decl., Sept. 4, 2013 [ECF No. 23-4], at ¶ 7.) Moreover, as defendant notes, the USAO-EDNY was justified in its decision not to complete the search of its litigation databases because "it was determined that the records Plaintiff sought— relating to personnel action—would not be contained in criminal case files."[4] (*See* Def.'s Reply to Pltf.'s Opp. to Def.'s Mot. for Summ. J. ("Reply"), Nov. 26, 2013 [ECF No. 29], 5; Supp. Henriquez Decl., Nov. 26, 2013 [ECF No. 29-3], at ¶ 2.) Under FOIA, defendant is not required to search "every record system." *See Oglesby*, 920 F.2d at 68. It is only required to search locations where responsive documents are likely to be found. *Id.* Based on the sworn declarations, which must be afforded a presumption of good faith, the Court finds that defendant did just that by engaging in a targeted search for personnel documents relating to former AUSA Granger.

In addition, the adequacy of the search's scope is further supported by the fact that defendant expanded its search for responsive documents outside of the USAO-EDNY and the EOUSA, even though it was under no legal obligation to do so. *See* 28 C.F.R. § 16.4 & 16.1(b). Specifically, the EOUSA forwarded plaintiff's FOIA request to the NPRC where OPFs are stored when government employees leave their employment with the United States government. (*See* Cook Decl. at ¶¶ 2-3.) Though the NPRC was unable to locate the particular documents that plaintiff hoped it would find, it was able to locate Granger's personnel file, which further demonstrates the adequacy of the scope of defendant's search and rebuts any conclusory

---

[4] Dorla Henriquez of the USAO-EDNY explains in one of her declarations that she began searching litigation files based on the reference to court transcripts in the Second Request. However she determined that "criminal case files would not contain any exhibits to a termination letter or any court transcripts or audio or visual recordings related to the termination of Ray Granger." (Supp. Henriquez at ¶ 2.)

allegations made by plaintiff that the defendant failed to act in good faith in its attempt to locate responsive documents. (*See* Supp. Luczyski Decl. at ¶ 6.)

Second, insofar as plaintiff argues that the search was inadequate because it failed to find documents that existed (or at least should have existed) at some prior time, he has misunderstood the relevant legal inquiry. When analyzing the adequacy of a FOIA search, a court must focus on the means, not the ends. In this vein, the Court of Appeals has held, "[m]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *SafeCard Servs.*, 926 F.2d at 1201. Even though, as plaintiff argues, it may "strain[] credulity that a proposed termination letter would not be in the personnel file of the individual it was sent to," such speculation does not constitute a sufficient basis on which to deny defendant's summary judgment motion. (*See* Opp. at 7.) Similarly, though plaintiff is able to present evidence that responsive documents may once have existed within the DOJ, such as a so-called "Ray Granger litigation file," the fact that these documents were not found as part of defendant's FOIA search does not render the agency's search inadequate. (*See id.*) To the contrary, such documents—if the DOJ still had access to them after more than fifteen years—would have almost certainly been found during the course of defendant's multiple searches, especially the search of the NPRC. "The fact that responsive documents once existed does not mean that they remain in the [agency's] custody today or that the [agency] had a duty under FOIA to retain the records." *Wilbur*, 355 F.3d at 678 (citing *Yeager v. Drug Enforcement Admin.*, 678 F.2d 315, 321 (D.C. Cir. 1982)).

Ultimately, based on the sworn declarations provided by the defendant, the Court has "little difficulty concluding that the [agency] made a 'good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to product the information

9

requested.'" *Schoenman v. FBI*, 575 F. Supp. 2d 136, 151 (D.D.C. 2008) (quoting *Oglesby*, 920 F.2d at 68.) These affidavits "describe in . . . detail what records were searched, by whom, and through what process." *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994). They demonstrate that defendant engaged in an adequately broad search in light of plaintiff's narrow request for documents concerning the termination of an employee more than fifteen years ago. Because plaintiff "has not offered [sufficient] evidence that would raise 'substantial doubt' as to the adequacy" of these searches, the Court will grant defendant's motion for summary judgment. *See Williams v. Dep't of Justice*, 171 Fed. Appx. 857, 857 (D.C. Cir. 2005) (citing *Valencia-Lucena*, 180 F.3d at 326).

## CONCLUSION

Accordingly, and for the reasons stated above, the motion for summary judgment will be **GRANTED**. A separate order accompanies this Memorandum Opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date: January 22, 2014