## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                           )

**HOWARD BLOOMGARDEN,**        )
                           )
    **Plaintiff,**                )
                           )
       **v.**                   )     **Civil Action No. 12-0843 (ESH)**
                           )
**UNITED STATES DEPARTMENT**   )
**OF JUSTICE,**                 )
                           )
    **Defendant.**             )
_____ )

## <u>MEMORANDUM OPINION</u>

Plaintiff Howard Bloomgarden brings this suit against the Department of Justice ("DOJ") to compel the production of records by the Executive Office for United States Attorneys ("EOUSA") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  (Am. Compl. [ECF No. 11].)[1]  After DOJ successfully moved for summary judgment—claiming that no responsive documents could be located—plaintiff appealed, and the case was remanded for further proceedings when responsive documents were subsequently located.  (*See* Jan. 22, 2014 Mem. Op. [ECF No. 31]; Dec. 10, 2014 Order [ECF No. 38].)  DOJ then declined to produce those documents, claiming various exemptions under FOIA, and the parties have now cross-moved for summary judgment.  (Pl.'s Mot. for Summ. J. [ECF No. 50-3]; Def.'s Mot. for Summ. J. [ECF No. 69-1].)  For the reasons stated below, defendant's motion will be granted in part.

---

[1] Plaintiff has also filed a related suit against DOJ under the Administrative Procedure Act, 5 U.S.C. § 706, claiming that DOJ's refusal to disclose the requested documents was contrary to his constitutional rights.  (*See* Compl., Case No. 15-cv-298 (ESH) (D.D.C. Mar. 2, 2015).)  This opinion pertains solely to plaintiff's FOIA case.

## BACKGROUND

Plaintiff seeks to acquire documents from the disciplinary file of a former Assistant United States Attorney (the "former AUSA"), who worked for DOJ in the Eastern District of New York ("EDNY") in the mid-1990s.  (*See* Pl.'s Mot. for Summ. J. at 9-11.)  Beginning in January 1995, the former AUSA was the lead prosecutor in a state-federal investigation into certain drug-related crimes, including the kidnapping and murder of Peter Kovach and Ted Gould, which eventually led to plaintiff accepting a guilty plea in the EDNY.  (*Id.* at 1, 7-8.)  The former AUSA was removed from plaintiff's case in November 1995 (*id.* at 4), and his termination by DOJ was later proposed in a thirty-five page disciplinary letter (the "Letter"), which was accompanied by a table of contents and 3,649 pages of supporting evidence (together, "the Disciplinary File").  (*See* Def.'s Mot. for Summ. J. at 5.)  Plaintiff believes that the Disciplinary File may show that the AUSA engaged in prosecutorial misconduct ███████████ ████████████████████████████████████████████████████████████.  (*See* Pl.'s Mot. for Summ. J. at 36.)  If such a showing could be made, plaintiff believes that it could help his effort to get a new trial before a California state court, where in 2014 he was convicted of the Kovach-Gould murders.  (*See id.* at 8-9.)

In February 2015, prior to the filing of the pending cross-motions, the Court ordered DOJ to produce an unredacted copy of the Letter for *in camera* review.  (*See* Feb. 20, 2015 Order [ECF No. 42].)  Weeks later, the Court held a status conference at which it noted that the Letter reflected the AUSA's "professional failings," but it questioned the public's interest in learning about an "inadequate, incompetent, sort of disobedient . . . employee."  (*See* Mar. 4, 2015 Hearing Tr. [ECF No. 45] at 20:20-22:5.)  It also ordered DOJ to produce a Vaughn Index outlining DOJ's basis for withholding the entire Disciplinary File under the FOIA.  (*See* Mar. 10,

2015 Minute Order.)  The Vaughn Index that DOJ submitted was, as the Court stated at a

November 2015 hearing, "useless [and] deficient" because it impermissibly lumped hundreds of

pages together in a single entry, making it impossible to understand which claimed exemptions

applied to which documents (and why).  (*See* Nov. 4, 2015 Hearing Tr. [ECF No. 81] at 7:12-

23.)  Nevertheless, having reviewed the Letter *in camera*, the Court did indicate that "it is

probably true that [the Letter was not created] for law enforcement purposes and so [Exemption

7(C)] does not apply.  [Exemption 6 might apply], but it only applies to the Letter."  (*Id.* at

11:17-20.)  The Court then confirmed this ruling from the bench at a January 2016 hearing: "I've

already ruled that the letter is not covered by [Exemption] 7(C) and that it is protected by

[Exemption] 6."  (Jan. 5, 2016 Hearing Tr. at 11:13-14.)

Plaintiff now suggests that the Court's ruling on the Letter was merely "tentative."  (*See*

Pl.'s Mot. for Vaughn Index [ECF No. 105] at 7 n.8.)  Therefore, to dispel any further doubt on

that score, the Court issues the instant opinion.

## ANALYSIS

### I.  LEGAL STANDARD

Summary judgment is appropriate if the pleadings and evidence on file show that there is

no genuine issue of material fact and that the moving party is entitled to judgment as a matter of

law.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986).  "In a FOIA case, summary

judgment may be granted to the government if 'the agency proves that it has fully discharged its

obligations under the FOIA, after the underlying facts and the inferences to be drawn from them

are construed in the light most favorable to the FOIA requester.'"  *Fischer v. Dep't of Justice,*

596 F. Supp. 2d 34, 42 (D.D.C. 2009) (quoting *Greenberg v. U.S. Dep't of Treasury,* 10 F. Supp.

2d 3, 11 (D.D.C. 1998)).  As relevant here, the agency has the burden to "prove that each

document that falls within the class requested . . . is wholly exempt from the [FOIA's] inspection

requirements."  *See Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 352 (D.C. Cir. 1978).

## II.  THE DISCIPLINARY LETTER

Having reviewed the Letter *in camera* and having considered the extensive briefs and

arguments by the parties, the Court will rule on the exemptions relied on by defendant to justify

the withholding of the Letter.[2]  Those exemptions are 7(C) and 6.[3]

### A.  Exemption 7(C)

Exemption 7(C) protects from disclosure "records or information compiled for law

enforcement purposes, but only to the extent that the [disclosure] . . . could reasonably be

expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).

DOJ asserts that Exemption 7(C) applies because "[e]very document in the proposed removal

and the evidence supporting that proposal is related to, created for, or involves the prosecution of

---

[2] In his motion for a new Vaughn Index, plaintiff expressly seeks to include a description of the Letter, suggesting that he is entitled to "as much information as possible in advance of briefing before the Court."  (*See* Pl.'s Mot. for Vaughn Index at 7 n.8.)  What plaintiff fails to recognize is that DOJ's current summary judgment briefing has provided ample information about both the Letter and DOJ's grounds for withholding it.  (*See* Def.'s Mot. for Summ. J. at 5 (describing "an approximately 35 page 'Proposal' letter detailing the justification and basis for removal of the AUSA"); *id.* at 10-11 (Letter "describes 'an inadequate, incompetent, sort of disobedient . . . employee'" and was thus withheld under Exemption 6 to protect the AUSA's privacy interest).)

[3] Although the Vaughn Index relies heavily on Exemption 5, its December 2014 FOIA response to plaintiff, the Luczynski Declaration, and its summary judgment briefing all discuss only Exemptions 6 and 7(C).  (*See* Def.'s Mot. for Summ. J. at 10-19; Ex. 7 to Def.'s Mot. for Summ. J. [ECF No. 67-7] ¶¶ 19-36; Ex. QQ to Pl.'s Mot. for Summ. J. [ECF No. 55].)  Therefore, the Court will treat any reliance on Exemption 5 as abandoned.  *See, e.g.*, *Lowe v. Surface Transp. Bd.*, 540 Fed. App'x 6, 7 (D.C. Cir. 2013) ("Offerors did not brief these issues; consequently, they are abandoned.").

a criminal case." (Def.'s Mot. for Summ. J. at 15.)  By DOJ's rationale, virtually all documents in its possession would qualify, because they arguably have some attenuated "relat[ion] to" law enforcement purposes.  However, this states the test too broadly—a document is not exempt if it is merely "related to" a criminal prosecution, but instead it must have been "compiled for" that purpose.  *See* 5 U.S.C. § 552(b)(7)(C); *Stern v. F.B.I.*, 737 F.2d 84, 89 (D.C. Cir. 1984).

Nor is it enough that a law enforcement agency, acting as an employer, compiled the document as part of a supervisory investigation into its own employee's conduct.  *See Kimberlin v. Dep't of Justice*, 139 F.3d 944, 947 (D.C. Cir. 1998).  Instead, to withhold an employee disciplinary file under Exemption 7(C), DOJ must show that it focuses "directly on *specifically alleged illegal acts . . . of particular identified officials*, acts which could, if proved, result in civil or criminal sanctions."  *See Rural Hous. Alliance v. U.S. Dep't of Agric.*, 498 F.2d 73, 81 (D.C. Cir. 1974) (emphasis added).  DOJ does not contend that its investigation of the former AUSA involved any suspicion of illegal activity, or that the Letter made any such allegation.  Rather, the Letter arose out of precisely the type of run-of-the-mill employee discipline that falls outside of Exemption 7(C).

### B.  Exemption 6

Like Exemption 7(C), Exemption 6 is concerned with the protection of personal privacy, allowing agencies to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Because it unquestionably applies to the disciplinary records of federal employees like the former AUSA, *see Stern*, 737 F.2d at 90, the Court must only determine whether

disclosure would constitute a "clearly unwarranted" invasion of his privacy.  This entails

balancing the public's interest in disclosure against the former AUSA's interest in privacy.

### 1.   Public Interest

"[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to

which disclosure of the information sought would 'she[d] light on an agency's performance of its

statutory duties' or otherwise let citizens know 'what their government is up to.'"[4]  *U.S. Dep't of*

*Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994) (quoting *U.S. Dep't of Justice v.*

*Reporters Comm. For Freedom of Press*, 489 U.S. 749, 773 (1989)).  When, as here, the

information pertains to the alleged misconduct of a federal employee, relevant considerations

include the rank of the employee and seriousness of the allegations—the insubordination of a

rank-and-file employee is hardly a matter of national concern.  *See Kimberlin*, 139 F.3d at 949.

However, as plaintiff rightly notes, the public also has an interest in knowing how the agency

dealt with the misconduct, *i.e.*, whether it investigated in a timely fashion and, if necessary,

meted out discipline fairly and thoughtfully.  *See id*. at 948.

As regards the Letter, whatever light it might have shed on the internal operations of a

U.S. Attorney's office in 1996 has been greatly diminished over the past twenty years.  *Cf.*

*Cochran v. United States*, 770 F.2d 949, 959 n.15 (11th Cir. 1985) ("[T]here is a great public

---

[4] It is worth noting that, although plaintiff certainly has an "intense personal interest in obtaining whatever information might bolster the *Brady* claims he is presenting" to the California court, his personal interest is irrelevant to a FOIA balancing test.  *See Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1177 (D.C. Cir. 2011).  The *Roth* Court did recognize the public's interest in the exoneration of wrongfully convicted *death-row* inmates, but this narrow exception does not apply here because California prosecutors are no longer pursuing the death penalty in plaintiff's case (*see* Pl.'s Mot. for Summ. J. at 9).  *See Taplin ex rel. Lacaze v. U.S. Dep't of Justice*, 967 F. Supp. 2d 348, 356 (D.D.C. 2013) (citing *Roth*'s recognition of the public's interest "in the exoneration of individuals who have been sentenced to the 'ultimate punishment'").

interest in insuring the dissemination of *current, newsworthy information* . . . particularly when the information relates to the operations of government.") (emphasis added).  To be sure, there can be historical value in exposing government activity from long ago.  *See, e.g.*, *Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 811-12 (9th Cir. 1995) (strong public interest in an overzealous, politically motivated investigation into student protestors twenty-five years earlier); *Rosenfeld v. U.S. Dep't of Justice*, 2012 WL 710186, at *8 (N.D. Cal. Mar. 5, 2012) (significant public interest in documents suggesting that the FBI "used—or potentially abused—their investigative powers in order to aid Ronald Reagan in a non-law enforcement capacity" decades earlier).  But this is simply not that case.  Having examined the Letter, the Court finds that there is little public interest in a single, largely unremarkable disciplinary matter regarding a former AUSA who left government service two decades ago.  Nor does the Letter reflect that "the government dropped the ball" by not terminating the AUSA sooner.  (*See* Pl.'s Reply Br. [ECF No. 71-2] at 10.)  Instead, it reflects an ongoing effort by DOJ to correct professional failings until it became clear that warnings and corrective measures were not succeeding.

Plaintiff is correct that federal prosecutors do weighty, important work, affecting matters of "life, death, or lengthy incarceration."  (*Id.*)  But it does not necessarily follow that everything a prosecutor does is a matter of pressing public concern, especially as regards instances of garden-variety incompetence and insubordination, and *especially* years and years after the fact.  Perhaps recognizing this hurdle, plaintiff also asserts a more contemporary public interest: "[T]he fact that [the former AUSA] is a lawyer in private practice only heightens the public interest in the documents," because he remains admitted to practice before certain federal courts.  (*See id.*)  However, as noted above, the only relevant public interest in disclosure is in showing citizens "what their *government* is up to," not whether a public servant who left the government

twenty years ago is a capable attorney.  *See Reporters Comm. For Freedom of Press*, 489 U.S. at

773 (emphasis added).  Thus, the public's interest in disclosure of the Letter is minimal.

### 2.  Privacy Interest

It is an "indisputable proposition that disclosure of information identifying a particular

attorney as the subject of a dismissed disciplinary proceeding . . . would violate substantial

privacy interests of the attorney."  *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 394 (D.C.

Cir. 1987).  And even if, as here, the government attorney has already been publicly identified,

the proceeding's undisclosed details are still likely to be "personal and potentially embarrassing"

if revealed.  *See Parker v. U.S. Dep't of Justice*, 68 F. Supp. 3d 218, 231 (D.D.C. 2014);

*Kimberlin*, 139 F.3d at 949 (disclosure of a "staff-level government lawyer['s disciplinary file] . .

. would occasion an invasion of [his] privacy," even though he had already been publicly

identified); *see also Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*,

746 F.3d 1082, 1092 (D.C. Cir. 2014) (former congressman's "privacy interest in the contents of

[his] investigative files is not insubstantial" even though he had publicly acknowledged that he

was under investigation).  Although the events at issue occurred twenty years ago, "[t]he passage

of time, without more, does not materially diminish these interests."  *See Schrecker v. U.S. Dep't

of Justice*, 349 F.3d 657, 666 (D.C. Cir. 2003).  Indeed, as plaintiff himself notes, the former

AUSA remains an attorney in private practice, and so without question he has a strong interest in

avoiding decades-old disclosures that would likely cause him professional embarrassment.  *See

Dep't of Air Force v. Rose*, 425 U.S. 352, 380-81 (1976) (recognizing that ex-cadets, and

particularly those who continue to serve in the military, have a privacy interest in their student

disciplinary files).

8

Plaintiff also asserts that DOJ conceded, at a March 2015 hearing, that "any potential claim to privacy on [the AUSA's] part is moot if 'there was an adjudication on the merits of the[] allegations'" in his disciplinary file. (Pl.'s Reply Br. at 9.)  He further contends that his other FOIA requests have turned up evidence that such an "adjudication" did take place.  (*Id.*)  Although not expressly styled as such, the Court construes this argument as one of waiver: if the AUSA appealed his termination in a public proceeding before the Merit Systems Protection Board ("MSPB"), then he arguably would have waived any expectation of privacy he might have had in that subject matter.  *See Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995) (several public statements by former presidential candidate waived his privacy interest in the subject matter of those statements).  However, plaintiff bears the initial burden to show what information has already been placed into the public domain, *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1279 (D.C. Cir. 1992), and the Court finds that he has failed to carry that burden.  He has provided evidence only of an *intra-agency* determination made by Dennis Corrigan, Chief of Staff to the Deputy Attorney General.  (Ex. JJ to Pl.'s Mot. for Summ. J. [ECF No. 53].)  Both parties speculate that the AUSA *may* have appealed Corrigan's determination to the MSPB, but without more, there is simply no basis to find that the AUSA waived his privacy interest in the proposed termination.[5]

### 3.  Balancing

---

[5] Plaintiff has submitted to the Court evidence that the AUSA publicly challenged a different DOJ determination—that he was a probationary employee who could be terminated at will—but that issue is distinct from whether DOJ had sufficient grounds to terminate him for cause. (*See* Ex. EE to Pl.'s Mot. for Summ. J.)

For Exemption 6 to apply, disclosure must cause a "clearly unwarranted" invasion of privacy, and for the reasons already discussed, the Court finds that to be the case here.  The former AUSA has a strong interest in avoiding the professional embarrassment that disclosure would likely cause, while the public has only a negligible need to know about a largely unremarkable, decades-old disciplinary proceeding involving an entry-level prosecutor.  A similar result was reached in *Parker*, which also involved a FOIA request for the disciplinary file of an AUSA.  68 F. Supp. 3d at 232.  The court found that "[a]lthough there is a valid public interest in knowing how defendant handled its investigation of former AUSA Jackson's unlicensed practice of law, the privacy interest at stake . . . outweighs that public interest because this record details a specific proposed adverse employment action against Ms. Jackson that sheds little light on defendant's handling of the investigation."  *Id*.  Just so here.  In fact, the request in *Parker* sought a more contemporary record of DOJ's disciplinary procedures, so the public interest was arguably greater than in the outdated Letter sought here.  Accordingly, Exemption 6 allows the Letter to be withheld.

### C.  Segregability

Typically, Exemption 6 protects only personal identifying information within an employee's disciplinary file—it is this sensitive information that creates the "clearly unwarranted" invasion of privacy, not the substance of the file itself.  *See Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review*, 76 F. Supp. 3d 184, 191 (D.D.C. 2014) (upholding redaction of personal information in employee disciplinary files that were otherwise produced); *Lewis v. U.S. Dep't of Justice*, 867 F. Supp. 2d 1, 17 (D.D.C. 2011) ("Information protected under Exemption 6 includes such items as a person's name, address, place of birth,

employment history, and telephone number.").  However, if the substance of the file would allow the employee to be identified—despite the redaction of the employee's personal information— then it may be withheld in its entirety.  *See Rose*, 425 U.S. at 381 ("[I]f . . . deletion of personal references and other identifying information is not sufficient to safeguard privacy, then the summaries should not be disclosed . . . .") (internal quotation marks omitted); *see also Carter*, 830 F.2d at 391.

Here, redaction of the Letter would be ineffective, because plaintiff has already publicly identified the former AUSA as its subject.  (*See, e.g.*, Compl. [ECF No. 1] ¶ 6; Pl.'s Statement of Material Facts [ECF No. 26-1] ¶ 12; Pl.'s Mot. for Summ. J. [ECF No. 58-1] at 10.)  Moreover, plaintiff seeks the Letter as support for his assertion in a California court that misconduct by the prosecutor entitles him to a new trial—his stated purpose is to connect the former AUSA specifically with that alleged misconduct, and thus redaction would be fruitless.  (*See* Ex. FF to Pl.'s Mot. for Summ. J.)  In other words, the Letter's content and the former AUSA's identity are "inextricably intertwined."  *Covington v. McLeod*, 646 F. Supp. 2d 66, 72 (D.D.C. 2009) (FOIA requester not entitled to redacted transcript of co-defendant's grand jury proceeding because a redacted version would still invade co-defendant's privacy).  And even if the former AUSA had not been publicly identified as the Letter's subject, the Court finds that the exhaustively detailed thirty-five page Letter would allow others to identify him as the responsible U.S. Attorney in each of the cases discussed therein.  *See Rose*, 425 U.S. at 381.  As such, it is clear that redaction of his name and address would do nothing to avoid a "clearly unwarranted" invasion of his privacy.  *See also Parker*, 68 F. Supp. 3d at 232 (finding letter detailing a proposed adverse employment action against a former AUSA "protected in its entirety by FOIA Exemption 6").

## CONCLUSION

Accordingly, and for the reasons stated above, plaintiff's motion for summary judgment will be **DENIED IN PART**, and defendant's motion for summary judgment will be **GRANTED IN PART**.  A separate order accompanies this Memorandum Opinion.


                                              /s/
                              ELLEN SEGAL HUVELLE
                              United States District Judge

Date: February 5, 2016