UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HOWARD BLOOMGARDEN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES DEPARTMENT ) <br> OF JUSTICE, ) <br> ) <br> Defendant. ) | Civil Action No. 12-0843 (ESH) |

## MEMORANDUM OPINION

After a long and tortured history, it appears that this dispute is finally coming to its end. Having resolved all of their other disagreements under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, the parties now cross-move for summary judgment regarding a handful of documents that DOJ continues to withhold. (*See* Pl.'s Mot. for Summ. J. [ECF No. 125-2]; Def.'s Cross. Mot. for Summ. J. [ECF No. 129-3].) For the reasons that follow, the Court will deny plaintiff's motion and grant defendant's cross-motion.

## BACKGROUND

The Court has described in greater detail the background of this case in its earlier opinions, so it will provide only an abbreviated history. Plaintiff seeks the disclosure of a disciplinary file of a former Assistant United States Attorney (the "former AUSA"), who initially led a team that prosecuted Bloomgarden in the Eastern District of New York in the 1990s, before his supervisors removed him from the case and recommended him for termination. *See Bloomgarden v. United States Dep't of Justice*, 2016 WL 471251, at *1 (D.D.C. Feb. 5, 2016).

Plaintiff believes that the former AUSA engaged in prosecutorial misconduct, specifically with regard to forged or unauthorized signatures ▮, and that the disciplinary file could help to prove this assertion. *See id.* The Court previously ruled that a thirty-five page letter that detailed the former AUSA's professional shortcomings (the "Letter") was properly withheld by DOJ under Exemption 6. *See id.* at *5.[1] Of the supporting documentation in the file—included as evidence of the disciplinary charges laid out in the Letter—DOJ has now disclosed a significant number of documents to plaintiff, and plaintiff has decided not to challenge the withholding of others. (*See* Pl.'s Notice of Contested Withholdings [ECF No. 122] at 1-2.) The remaining documents at issue here can be broken into two categories: (1) documents reflecting the content of certain proffers made to EDNY investigators, and (2) redacted proffer agreements that have otherwise been produced to plaintiff.

## ANALYSIS

### I. LEGAL STANDARD

Summary judgment is appropriate if the pleadings and evidence on file show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). "In a FOIA case, summary judgment may be granted to the government if 'the agency proves that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester.'" *Fischer v. U.S. Dep't of Justice,* 596 F. Supp. 2d 34, 42 (D.D.C. 2009) (quoting *Greenberg v. U.S. Dep't of Treasury,* 10

---

[1] Plaintiff again challenges the withholding of the Letter in this motion, in order to preserve the issue for a potential appeal. (Pl.'s Mot. for Summ. J. at 2.)

F. Supp. 2d 3, 11 (D.D.C. 1998)). As relevant here, the agency has the burden to "prove that each document that falls within the class requested either has been produced or . . . is wholly exempt from [FOIA's] inspection requirements." *See Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 352 (D.C. Cir. 1978).

## II. WITHHELD PROFFER DOCUMENTS[2]

The first group of withheld documents contains notes from proffer sessions in which an individual provided information to investigators about criminal activities. (*See* Def.'s Cross-Mot. for Summ. J. at 5.) Plaintiff has limited his challenge insofar as he "only seeks these documents to the extent that they contain proffer agreements, or if they relate to any of his co-Defendants." (*See* Pl.'s Mot. for Summ. J. at 2; *see also* Pl.'s Reply Br. at 1.) Having reviewed these documents *in camera*, the Court finds that neither condition applies—the documents contain the substance of certain proffer sessions, not the proffer agreements themselves, and none of them pertain to Mr. Bloomgarden or any of his co-defendants. As such, this challenge is deemed waived by plaintiff.

## II. REDACTED PROFFER AGREEMENTS[3]

The remaining withholdings challenged by plaintiff consist of redacted names and signatures of government agents on proffer agreements that were otherwise disclosed to him.

---

[2] These documents have been marked by defendant as Bloomgarden 0538-40, 0547. (Pl.'s Reply Br. at 1.) In addition, plaintiff challenges the withholding of Bloomgarden 3004, which also reflects notes from a proffer session, so the Court considers that document here. (*See* Def.'s Cross-Mot. for Summ. J. at 5.)

[3] These documents have been marked by defendant as Bloomgarden 1728-30, 1934-35, 1965-68, 1990-91, 2222-25, 2262-63, 2980-81, 3005-06, 3095-96, 3207-08. (*See* Pl.'s Mot. for Summ. J. at 1.) Plaintiff has withdrawn any challenge to Bloomgarden 3007. (*Id.* at 1 n.2.)

3

(*See* Pl.'s Mot. for Summ. J. at 2.) DOJ asserts that this information was properly withheld under both Exemption 6 and 7(C). (See Def.'s Cross-Mot. for Summ. J. at 12.) The Court need only address the latter exemption.

Information may be withheld pursuant to Exemption 7(C) if (1) it was "compiled for law enforcement purposes," and (2) it "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *See* 5 U.S.C. § 552(b)(7)(C). There is no question that these proffer agreements—which set forth the conditions under which individuals would provide law enforcement with information about criminal activity—were compiled for law enforcement purposes. *See, e.g., Venkataram v. Office of Info. Policy*, 2013 WL 3871730, at *8-*9 (D.N.J. July 25, 2013). Bloomgarden does not argue otherwise. Instead, the very narrow issue before the Court is whether disclosure of the names and signatures of government investigators would constitute an "unwarranted" invasion of personal privacy. If it would, then the information was properly withheld; if it would not, then DOJ must disclose, because by extension, it could not possibly meet its higher burden of showing a "clearly unwarranted" invasion of privacy under Exemption 6. *See* 5 U.S.C. § 552(b)(6) (agency entitled to withhold "personnel and medical files and similar files the disclosure of which would constitute a *clearly unwarranted* invasion of personal privacy") (emphasis added).

To determine whether an invasion of privacy is unwarranted, the Court must "balance the public interest in disclosure against the interest Congress intended the Exemption to protect." *See U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 776 (1989). As the D.C. Circuit has repeatedly noted, Exemption 7(C) protects the "strong interest" of criminal investigators "in not being associated unwarrantedly with alleged criminal activity." *See Dunkelberger v. Dep't of Justice*, 906 F.2d 779, 781 (D.C. Cir. 1990) (quoting *Stern v. Fed.*

*Bureau of Investigation*, 737 F.2d 84, 91-92 (D.C. Cir. 1984)); *see also Bast v. U.S. Dep't of Justice*, 665 F.2d 1251, 1254 (D.C. Cir. 1981) (Exemption 7(C) "recognizes the stigma potentially associated with law enforcement investigations and affords broader privacy rights to suspects, witnesses, and investigators"). These cases are fatal to plaintiff's argument that "nothing about the names or signatures of *governmental* officials involved in a proffer implicates legitimate governmental privacy." (*See* Pl.'s Mot. for Summ. J. at 4.) Although certain decisions have found only a minimal privacy interest in the names of federal employees, *see, e.g., Simpson v. Vance*, 648 F.2d 10, 14 (D.C. Cir. 1980), those cases did not involve criminal investigators or the unique privacy concerns identified in *Dunkelberger*, *Stern*, and *Bast*.

On the other side of the scale, the public interest in disclosure of these names—on decades-old agreements signed between 1992 and 1994—is negligible at best. Plaintiff is of course correct that "the people are permitted to know what their government is up to." *See Reporters Comm. For Freedom of Press*, 489 U.S. at 772-73 (emphasis omitted). However, he ignores the fact that the content of the proffer agreements has already been disclosed to him, and thus the public has already received the relevant information. Nothing in the investigators' redacted identities would further inform the public on that score. For instance, he does not allege that the investigators whose names are redacted engaged in any wrongdoing, which might have made disclosure of their identities more justifiable.[4] *See Stern*, 737 F.2d at 91 (ordering disclosure of censured FBI agent's identity). Nor does he suggest any other reason why the public would need to know which particular investigators entered into those agreements.

---

[4] DOJ has not redacted the name or signature of the former AUSA on any of the documents.

5

Instead, he seeks this disclosure in the belief that the signatures themselves will "reveal that the Department of Justice tolerated injustice in the form of sham proffers and/or failed to take appropriate remedial actions once that injustice was discovered." (*See* Pl.'s Mot. for Summ. J. at 5.) In other words, having alleged that the former AUSA forged a fellow prosecutor's signature ███████████████████████, he believes that the ███ agreements at issue here will show evidence of similar forgeries. (*See* Pl.'s Reply Br. at 3 ("The People have a right to know whether signatures on contracts entered into on their behalf were forged.").) Having reviewed the investigators' signatures *in camera*, the Court finds absolutely nothing that might support plaintiff's theory. Beyond the fact that the signatures just look like ordinary signatures, the alleged forgeries on ███████████ agreements were preceded by a "/s/" symbol, indicating that someone else was signing on the signatory's behalf. (*See* Ex. G to Pl.'s Mot. for Summ. J. [ECF No. 51-1].) No "/s/" symbols appear in this redacted material. Moreover, the former AUSA's disciplinary letter offers no indication that these signatures were forged or unauthorized. Thus, even if plaintiff were correct that the former AUSA did forge signatures or sign documents without authorization, the information withheld here by DOJ does nothing to prove it.

Accordingly, the Court finds that the public's interest in disclosure of these signatures is non-existent, and that on balance, disclosure would create an unwarranted invasion of the investigators' privacy interest. Defendant properly redacted this information under Exemption 7(C).[5]

---

[5] Ordinarily, after finding certain material protected from FOIA disclosure, the Court would then consider whether DOJ has produced all reasonably segregable information to plaintiff. *See, e.g., Dep't of Air Force v. Rose*, 425 U.S. 352, 381 (1976). As noted, however, DOJ has already provided that segregable information (the redacted agreements) to plaintiff.

## CONCLUSION

Plaintiff's motion for summary judgment is denied, and defendant's cross-motion for summary judgment is granted. For the reasons set forth by the Court in plaintiff's related case (*see* Mem. Op. & Order [ECF No. 55] at 3-4, Case No. 15-cv-298 (D.D.C. Apr. 5, 2016)), the Court will make limited redactions to this Opinion and file the unredacted version under seal. A separate Order accompanies this Memorandum Opinion.

/s/ *Ellen Segal Huvelle*
ELLEN SEGAL HUVELLE
United States District Judge

Date: July 19, 2016