# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| Howard Bloomgarden, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-0843 (ESH) |
| | ) | |
| United States Department of Justice | ) | |
| | ) | |
| Defendant. | ) | |

_____

## <u>MEMORANDUM OPINION</u>

Plaintiff Howard Bloomgarden sued the Department of Justice ("DOJ") to compel the production of records by the Executive Office for United States Attorneys ("EOUSA") under the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552, *et seq*. (Am. Compl., Nov. 9, 2012, ECF No. 11.)  After years of litigation, the government produced 2,035 unredacted pages and 1,013 partially redacted pages of the 3,700-page file that plaintiff requested.  (Pl.'s Mem. of P. & A. in Supp. of Pl.'s Mot. for Atty's Fees ("Pl.'s Mot."), Sept. 29, 2016, ECF No. 145-1, at 8.) Plaintiff now moves for attorney's fees and costs pursuant to Fed. R. Civ. P. 54(d) and 5 U.S.C. § 552(a)(4)(E).  (*Id.* at 1, 9.)  The government disputes that plaintiff is entitled to fees and costs and argues that, even if plaintiff were entitled to fees, the government should pay less than plaintiff seeks.  (Def.'s Mem. in Opp'n to Pl.'s Mot. for Atty's Fees ("Def.'s Opp'n"), Oct. 26, 2016, ECF No. 147, at 5.)

Upon consideration of plaintiff's motion, defendant's opposition, and plaintiff's reply (Pl.'s Reply to Def.'s Opp'n ("Pl.'s Reply"), Nov. 7, 2016, ECF No. 149), and for the reasons that follow, plaintiff's motion will be granted in part and denied in part.  The Court finds that

plaintiff is entitled to recover fees and costs pursuant to FOIA but less than the amount requested.[1]  Accordingly, plaintiff will be awarded $45,518.23 in fees and costs.

## BACKGROUND

This Court has described in detail the background of this case in its earlier opinions.  (*See* Mem. Op., Jan. 22, 2014, ECF No. 31, at 1–4; Mem. Op., Feb. 5, 2016, ECF No. 106, at 1–3; Mem. Op. & Order, April 13, 2016, ECF No. 118, at 1–2; Mem. Op., July 19, 2016, ECF No. 134, at 1–2.)  It will therefore limit its discussion to those of the facts that are relevant to plaintiff's current request for attorney's fees.

Plaintiff filed this FOIA action in 2012 in order to obtain the disciplinary file of a former Assistant United States Attorney in the United States Attorney's Office for the Eastern District of New York ("USAO-EDNY").  Plaintiff hoped that these documents would provide evidence of prosecutorial misconduct, which plaintiff had raised as a defense to the California state murder charges that had been brought against him.  Plaintiff continued to press his FOIA request after he was convicted of those charges in 2014, to support his motion for a new trial.

After plaintiff filed his FOIA request, the EOUSA searched without success for the requested documents.[2]  When the government could not identify any responsive documents, it moved for summary judgment.  (Def.'s Mot. for Summ. J., Sept. 4, 2013, ECF No. 23.)  On the basis of "five [] sworn declarations from three government employees detailing their search for responsive documents," this Court found that the government reasonably discharged its duties

---

[1] Plaintiff cites Fed. R. Civ. P. 16 as an alternative basis for a fee award.  (Pl.'s Mot. at 14–15.)  Because the Court concludes that plaintiff is entitled to fees and costs under FOIA's fee-shifting provision, the Court need not address this argument.

[2] The EOUSA provides administrative support to the United States Attorney's Offices, including the coordination of responses to FOIA requests.

under FOIA and granted the government's motion. (Mem. Op., Jan. 22, 2014, at 7.) Plaintiff appealed. (Notice of Appeal, March 31, 2014, ECF No. 33.)

While plaintiff's appeal was pending, another agency of the government located documents responsive to plaintiff's FOIA request, including a 35-page disciplinary letter. *Bloomgarden v. U.S. Dep't of Justice*, 2014 WL 6725736, at *1 (D.C. Cir. Nov. 13, 2014) (per curiam). Accordingly, the Court of Appeals dismissed plaintiff's appeal as moot and remanded the matter to this Court for further proceedings. *Id.*

On remand, this Court ordered the parties to confer and file a joint status report. (Minute Order, Jan. 14, 2015.) Plaintiff continued to seek disclosure of the entire disciplinary file, but the government refused to release any of the requested documents. (Status Report, Jan. 28, 2015, ECF No. 41, at 1–2.) After reviewing the parties' status report, the Court ordered the government to produce an unredacted copy of the 35-page disciplinary letter for *in camera* review. (Order, Feb. 20, 2015, ECF No. 42.) At the March 4, 2015 status conference, the Court set a briefing schedule for dispositive motions and ordered the government to produce a *Vaughn* Index outlining the legal bases for withholding the disciplinary file. (*See* Minute Order, Mar. 10, 2015.) On May 26, 2015, plaintiff moved for summary judgment. (Pl.'s Mot. For Summ. J., ECF No. 49.) The government cross-moved for summary judgment on July 15, 2015. (Def.'s Mot. For Summ. J., ECF No. 67).

As this Court noted,

[t]he Vaughn Index produced by DOJ was woefully inadequate, lumping hundreds of pages together into single entries and inadequately explaining why particular exemptions applied to particular documents. The Court was thus unable to rule on the vast majority of documents in the disciplinary file, though having reviewed certain documents *in camera*, it did rule that a 35-page disciplinary letter . . . from the file was properly withheld in its entirety under Exemption 6. The Court also noted that DOJ had failed to press its Exemption 5 argument in its motion, and thus that argument was deemed abandoned.

(Mem. Op. & Order, April 13, 2016, at 2 (citations omitted).)

Because of the "complete waste of time and expense that creating a proper Index would entail," the Court proposed – and the parties agreed – that

> (1) plaintiff would forego a proper *Vaughn* Index in exchange for (2) defendant disclosing any public documents it had previously withheld and (3) consenting to the *in camera* review of selected documents by Judge Rappe [who presided over plaintiff's California criminal case] for any possible *Brady* material related to plaintiff's California criminal case.

(Order, Feb. 17, 2017, ECF No. 110, at 1.) When the government indicated that it would withhold all court documents originally filed under seal, the Court ordered the government to file an index of the documents withheld pursuant to *Morgan v. U.S. Dep't of Justice*, 923 F.2d 195 (D.C. Cir. 1991). (Minute Order, Nov. 16, 2015.) The Court ultimately rejected the government's *Morgan* claims and ordered the government to produce the court filings that had been filed under seal some twenty years earlier. (Order, Jan. 5, 2016, ECF No. 100, at 1.)

Notwithstanding the Court's proposal, plaintiff moved for a new *Vaughn* index, which the government agreed to produce.

> Because the new *Vaughn* Index [was] only necessary because of DOJ's shoddy initial effort, the Court included a provision ordering that DOJ not get a second bite at the apple—having relied on Exemptions 6 and 7(C) initially, it would be bound by those litigation choices moving forward. DOJ's motion to amend that Order followed, arguing that despite its admitted error, it should be allowed to assert Exemptions 3, 7(D), and 7(F) to protect innocent third parties.

(Mem. Op. & Order, April 13, 2016, at 2 (citations omitted).) Granting the government's Motion to Amend, the Court allowed the government to raise new legal bases for withholding documents in order to protect informants and other third parties who might otherwise be prejudiced by disclosure. (*Id.* at 5.) At the same time, the Court ordered the government to release to plaintiff all reasonably segregable information within the withheld documents. (*Id.*)

4

In June 2016, the parties again cross-moved for summary judgment with respect to the documents the government continued to withhold. (Pl.'s Mot. for Summ. J., June 8, 2016, ECF No. 127; Def.'s Mot. for Summ. J., June 20, 2016, ECF No. 129.) Finding the government was correct in withholding the remaining documents, the Court denied plaintiff's motion for summary judgment and granted the government's cross-motion for summary judgment. (Mem. Op., July 19, 2016, at 7.) This Motion for Attorney's Fees followed plaintiff's unsuccessful Motion to Amend Judgment. (*See* Order, Aug. 12, 2016, ECF No. 141.)

**ANALYSIS**

FOIA provides that courts "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). As the D.C. Circuit has explained, the fee-shifting statute's language

> naturally divides the attorney-fee inquiry into two prongs, which our case law has long described as fee "eligibility" and fee "entitlement." *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 470 F.3d 363, 368–69 (D.C. Cir. 2006). The eligibility prong asks whether a plaintiff has "substantially prevailed" and thus "may" receive fees. *Id.* at 368. If so, the court proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff *should* receive fees. *Id.* at 369.

*Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011). If a court finds that a litigant is both eligible and entitled to fees pursuant to FOIA, the court must then consider whether the moving party has met its burden to establish that the requested fees are reasonable. *See Elec. Privacy Info. Ctr. v. United States Dep't of Homeland Sec.*, 2016 WL 6879251, at *6 (D.D.C. Nov. 21, 2016) ("The party seeking fees has the additional burden of establishing the reasonableness of the fees requested.")

Here, plaintiff contends, and the government agrees, that he is eligible for fees under the first prong of the attorney-fee inquiry. (Pls.' Mot. at 9; Def.'s Opp'n at 5.) However, the

government argues that plaintiff is not entitled to fees under the second prong of the inquiry and that, even if he were, "the amount [plaintiff] seeks is disproportionate to the work that led to the release of documents." (Def.'s Opp'n at 5.)

## I. PLAINTIFF'S FEE ELIGIBILITY

To be eligible for attorney's fees pursuant to FOIA, the party seeking fees must have "substantially prevailed" in the litigation. 5 U.S.C. § 552(a)(4)(E)(i). A party has "substantially prevailed" by obtaining relief through either "a judicial order, or an enforceable written agreement or consent decree" or through "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." *Id.* § 552(a)(4)(E)(ii)(I)–(II). The government does not dispute that plaintiff substantially prevailed in his FOIA lawsuit, and the Court concludes that plaintiff is eligible to recover attorney's fees and costs based on the court-ordered release of documents. (*See* Def.'s Opp'n at 5.)

## II. PLAINTIFF'S FEE ENTITLEMENT

To determine whether a FOIA plaintiff who is eligible for a fee award is also entitled to a fee award, courts must assess four factors: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding." *Davy v. C.I.A.*, 456 F.3d 162, 166 (D.C. Cir. 2006) ("*Davy I*") (quoting *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1093 (D.C. Cir. 1992)). While "[n]o one factor is dispositive" of the plaintiff's entitlement to fees, "the court will not assess fees when the agency has demonstrated that it had a lawful right to withhold disclosure." *Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008) ("*Davy II*") (citations omitted). "The sifting of those criteria over the facts of a case is a matter of district court discretion." *Tax Analysts*, 965 F.2d at 1094 (citing *Church of Scientology v. Harris*, 653 F.2d

584, 590 (D.C. Cir. 1981)).  Below, the Court considers each factor in light of the particular circumstances of this case.

## A.  The Public Benefit Factor

The first factor to consider when determining whether a FOIA litigant is entitled to fees is the "public benefit."  This factor weighs in favor of an award of attorney's fees "where the complainant's victory is likely to add to the fund of public information that citizens may use in making vital political choices."  *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (quoting *Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir. 1979)).  "This first factor requires consideration of both the effect of the litigation for which fees are requested and the public value of the information sought."  *Elec. Privacy Info. Ctr. v. F.B.I.*, 72 F. Supp. 3d, 338, 345 (D.D.C. 2014) (citations omitted).

Plaintiff does not contend that the records produced here "per se" benefit the public, but instead he argues that "the public interest in the records *sought* is plainly significant" because plaintiff believed those records could have revealed prosecutorial misconduct.  (Pl.'s Mot. at 10–11.)  The government responds that the public interest in the documents that plaintiff requested was negligible at best, as plaintiff hoped to further his efforts to secure a new trial in California state court, not inform the public of government misconduct.  (Def.'s Opp'n at 6.)  The government has the better argument.

Here, plaintiff's success is not "likely to add to the fund of public information that citizens may use in making vital political choices."  *See Cotton*, 63 F.3d at 1120.  The D.C. Circuit has made it clear that a "personal stake in using the requested records to attack [a FOIA litigant's] convictions does not count in the calculation of the public interest."  *Oguaju v. United States*, 288 F.3d 448, 450 (D.C. Cir. 2002), *vacated on other grounds*, 541 U.S. 970 (2004),

*reinstated*, 378 F.3d 1115 (D.C. Cir. 2004).  Further, the records here implicated a single, low-level prosecutor, not widespread or high-level corruption in the government.  As this Court has noted, the vast majority of the 3,700-page file that plaintiff requested has "little if any value to anyone, including plaintiff."  (Order, Feb. 17, 2016, at 1.)  And, "even if the records [plaintiff] s[ought] would reveal wrongdoing in his case, exposing a single, garden-variety act of misconduct would not serve the FOIA's purpose of showing 'what the government is up to.'"  *Oguaju*, 288 F.3d at 451 (quoting *Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 776 (1989)).  The Court therefore finds that the public-interest factor weighs against a fee award.

### B.  The Commercial Benefit and the Nature of Interest Factors

The second and third factors that courts must consider in determining a FOIA litigants entitlement to attorney's fees are the "commercial benefit" and the "plaintiff's interest."  Because the second and third factors are closely related, they are often evaluated together.  *Tax Analysts,* 965 F.2d at 1095; *see Fenster*, 617 F.2d at 743 ("Two of the four criteria are closely related in this case: the commercial benefit to the complainant and the nature of the complainant's interest in the record sought.").  "FOIA was fundamentally designed to inform the public and not to benefit private litigants. . . . Accordingly, when a litigant seeks disclosure for a commercial benefit or out of other personal motives, an award of attorney's fees is generally inappropriate."  *Tax Analysts*, 965 F.2d at 1095 (quotation marks and citations omitted); *Fenster*, 617 F.2d at 743.

With respect to the second factor, it is undisputed that plaintiff derived no commercial benefit from his FOIA request.  (*See* Pl.'s Mot. at 12; Def.'s Opp'n at 8–9.)  With respect to the third factor, plaintiff "acknowledges that he had a personal incentive to seek the documents at

issue as he hoped that they might help him uncover federal-state prosecutorial misconduct sufficient to grant him a new trial in his criminal case." (Pl.'s Mot. at 12.) Plaintiff argues that, notwithstanding his personal interest, "his criminal proceedings are a subject of consistent, long-time public interest" and that, were he to succeed in securing an evidentiary hearing for a new trial in his criminal matter, "the private interest here and the public interest will eventually converge." (*Id.*) The government responds that the nature of plaintiff's interest counsels against a fee award for the same reasons that plaintiff's FOIA litigation was not for the public benefit. (*See* Def.'s Opp'n at 8–9.)

While it is true that plaintiff did not seek to gain a commercial benefit through his FOIA suit, he sought to further his personal interest by trying to use the requested documents to collaterally attack his conviction in California state court. As explained above, there is no public interest in plaintiff's attempt to uncover evidence that would absolve him of criminal liability. *See Oguaju*, 288 F.3d at 450. Because of plaintiff's personal motivation to seek the disciplinary file, the Court finds that the third and fourth factors together weigh against plaintiff's fee request. *See Tax Analysts*, 965 F.2d at 1095.

### C. The Reasonableness of the Agency's Withholding Factor

The fourth factor courts must consider is whether the agency's withholding of the records "had a reasonable basis in law." *Id.* at 1096. This factor "is intended to weed out those cases in which the government was 'recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior.'" *Id.* at 1097 (quoting *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1366 (D.C. Cir. 1977)). Indeed, one of the "twin congressional goals" of FOIA's attorney's fees provision is to provide "compensation for enduring an agency's unreasonable obduracy in refusing to comply with the Freedom of Information Act's requirements." *La Salle Extension Univ. v. Fed. Trade*

*Comm'n*, 627 F.2d 481, 484 (D.C. Cir. 1980). If the government's withholding of documents is correct as a matter of law, there are no grounds on which to award fees. *Davy II*, 550 F.3d at 1162. However, if the government's withholding of documents is "founded on a colorable basis in law, that will be weighed along with other relevant considerations in the entitlement calculus." *Id.* (quoting *Chesapeake Bay Found., Inc. v. U.S. Dep't of Agric.*, 11 F.3d 211, 216 (D.C. Cir. 1993)).

Plaintiff argues that "[e]xcept as to thirteen documents that his Court authorized the Government to withhold . . . , the Government's withholdings had absolutely no basis in law and needlessly, grotesquely, protracted this litigation." (Pl.'s Mot. at 13.) Thus, given the statutory goal to compensate litigants faced with unreasonable government obduracy, plaintiff reasons that "this factor alone strongly weighs in favor of an award of fees." (*Id.* (citing *Cuneo*, 553 F.2d at 1365–66).) With good reason, the government concedes that "it should have produced the public and segregable documents in the file earlier." (Def.'s Opp'n at 10.) However, the government argues that this factor is nevertheless "neutral" because the Court "ordered the release of some documents and upheld the withholding of others." (*Id.* (citing *Nkihtaqmikon v. Bureau of Indian Affairs*, 672 F. Supp. 2d 154, 173 (D. Me. 2009)).)

While the government was correct in its withholding of a number of documents, this litigation was plagued by the government's obdurate and recalcitrant behavior. The government initially refused to release any documents, including public documents. When the government first attempted to create a *Vaughn* index, it was "woefully inadequate," so the Court was unable to evaluate the government's invocation of FOIA exemptions. (Mem. Op. & Order, April 13, 2016, at 2.) Further, the government neglected its duty to produce any reasonably segregable materials from documents otherwise protected from disclosure, requiring the Court to order it to

do so.  As the Court noted when the government sought to raise new legal bases for withholding documents, in violation of *Maydak v. U.S. Dep't of Justice*, 218 F.3d 760 (D.C. Cir. 2000), the government "needlessly complicated and prolonged this litigation."  (Mem. Op. and Order, April 13, 2016, at 4.)  For the above reasons, the Court finds that the fourth factor weighs heavily in favor of awarding fees.

### D.  Balancing the Factors for Fee Entitlement

The Court is mindful that no single factor is dispositive of the FOIA fee-entitlement inquiry, and it considers the factors in light of the "twin congressional goals" of the FOIA fee-shifting provision.  *See LaSalle Extension Univ. v. F.T.C.*, 627 F.2d 481, 484 (D.C. C.ir. 1980). The first goal–"to encourage [FOIA] suits that benefit the public interest"–is not served by this lawsuit.  *See id.*  Given plaintiff's "sufficient private interest in the requested information," he "d[id] not need the additional incentive of recovering [his] fees and costs" to bring his FOIA suit. *See id.*

The second goal of the FOIA fee-shifting provision is to provide compensation to a successful litigant "for enduring an agency's unreasonable obduracy in refusing to comply with [FOIA's] requirements."  *Id.*  Congress did not intend a FOIA litigant who had a private interest to bring the FOIA suit or received a pecuniary benefit from the lawsuit to collect fees "unless the government officials have been recalcitrant in their opposition to a valid claim or have been otherwise engaged in obdurate behavior."  *Id.* (quoting S. Rep. No.854, 93d Cong., 2d Sess. 19 (1974)).  Because the government's obduracy unnecessarily prolonged this litigation, the second goal of the FOIA fee-shifting provision would plainly be served by an award of fees.

In sum, even though the first three factors do not favor an award of fees, the Court finds that plaintiff is entitled to recover a portion of his attorney's fees, given the government's obdurate behavior that unnecessarily prolonged this litigation.

## III. THE REASONABLENESS OF PLAINTIFF'S FEE REQUEST

Having found plaintiff eligible for and entitled to fees, the Court must now evaluate the reasonableness of plaintiff's requested fees and costs. Plaintiff "has the burden of establishing the reasonableness of [his] fee request, and supporting documentation must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended." *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004) (alteration, citations, and quotation marks omitted).[3] Here, plaintiff submitted detailed billing records showing dates, times, and the nature of the activities performed, and according to the declarations of plaintiff's counsel, those records accurately reflect the work performed. (*See* Ex. A–C, Pl.'s Mot.)

"The usual method of calculating reasonable attorney's fees is to multiply the hours reasonably expended in the litigation by a reasonable hourly fee, producing the 'lodestar' amount." *Bd. of Trs. of Hotel & Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998). Once a court determines the proper lodestar amount, it has discretion to adjust that amount for "nonproductive time or for time expended on issues on which plaintiff ultimately did not prevail." *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1499 (D.C. Cir. 1984) (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982)). However, fees should not be excluded for such work unless they are "truly fractionable" from the

---

[3] Although the *Brownlee* opinion dealt with a fee award under the Equal Access to Justice Act, 28 U.S.C. § 2412, such "decisions are nonetheless instructive in construing the applicable 'reasonable' standard that applies to fee awards under FOIA." *Judicial Watch*, 470 F.3d at 374.

claims on which the litigant prevailed. *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1338 n.13 (quoting *Copeland v. Marshall*, 641 F.2d 880, 892 n.18 (D.C. Cir. 1980) (en banc)). "The burden of justifying any deviation from the 'lodestar' rests on the party proposing the deviation." *Copeland*, 641 F.2d at 892. "When the Government seeks to rebut a rate or calculation or hours billed, it must provide just as plaintiff must provide specific evidence in his application for attorney's fees—'equally specific countervailing evidence.'" *Piper v. U.S. Dep't of Justice*, 339 F. Supp. 2d 13, 24 (D.D.C. 2004) (quoting *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1326)).

Courts must also "consider whether the success obtained on the remaining claims is proportional to the efforts expended by counsel." *George Hyman Const. Co. v. Brooks*, 963 F.2d 1532, 1535 (D.C. Cir. 1992). If it is not, the "hours reasonably expended on the litigation as a whole . . . may be an excessive amount." *Id.* (quoting *Hensley v. Eckerhart*, 451 U.S. 424, 434 (1983)). Accordingly, courts in this Circuit routinely reduce compensable fees by a uniform percentage to reflect the litigants' actual success. *See, e.g.*, *Elec. Privacy Info. Ctr. v. D.H.S.*, 982 F. Supp. 2d 56, 63 (D.D.C. 2013); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 878 F. Supp. 2d 225, 239 (D.D.C. 2012).

Based on his billing records, plaintiff submits that the lodestar in this case is $154,885.00. (Pl.'s Mot. at 14.) Plaintiff concedes that, because of the government's proper withholding of certain documents, the lodestar should be reduced and proposes a recovery of 35% of the fees incurred through the November 2015 hearing and 90% of the fees incurred after that hearing, plus costs. (*Id.*) Plaintiff therefore requests $75,654.23 in attorney's fees and $1,901.23 in costs, for a total award of $77,555.46. (*Id.*)

The government does not challenge plaintiff's lodestar methodology, nor does it challenge the sufficiency of the billing records. Rather, the government argues that reductions should be made for unproductive or unsuccessful work. According to the government, based on plaintiff's limited success, (1) plaintiff should not recover any fees incurred before June 30, 2014; (2) plaintiff should recover no more than 20% of the lodestar for work performed between June 30, 2014, and February 17, 2016; and (3) plaintiff should not recover any fees incurred after February 17, 2016. The government therefore proposes a maximum recovery of fees in the amount of $28,272.62. (Def.'s Opp'n at 12.)[4] The Court will now address each of these proposed reductions.

## A. Work Performed Before June 30, 2014

The government first argues that plaintiff should not recover any fees for legal work performed prior to June 30, 2014. (*Id.*) This time period covers all legal work from the filing of plaintiff's complaint through the government's discovery of responsive documents while plaintiff's appeal was pending before the D.C. Circuit. The government reasons that, because this Court found that the government's initial search for the documents was reasonable and therefore granted the government's motion for summary judgment, plaintiff is not entitled to any fees until he began litigating the release of the file. (*Id.* at 12–13). The Court agrees.

Prior to discovering the disciplinary file, the government did not act obdurately or otherwise unnecessarily prolong the litigation. To the contrary, as found by the Court in its January 23, 2014 Memorandum Opinion, in addition to conducting an adequate search of the files of the USAO-EDNY and EOUSA, the government "expanded its search for responsive

---

[4] The government does not appear to argue for any reductions in costs. On the basis of plaintiff's counsel's representation that those costs were reasonably incurred in the litigation, the Court will award the requested costs.

14

documents . . . even though it was under no legal obligation to do so" by forwarding plaintiff's

FOIA requests to the National Personnel Records Center, which stores the official personnel

folders of former government employees. (*Id.* at 8.) Indeed, the fact that the search did not

uncover the requested documents does not mean it was inadequate, and this Court found that

plaintiff's claims to the contrary were unavailing. (*Id.* at 9.) On this basis, the Court granted

defendants' motion for summary judgment. (*Id.* at 10.) Consequently, plaintiff did not prevail in

this first phase of litigation.

Further, the legal work performed in opposing the government's motion for summary

judgment can be reasonably separated from plaintiff's successful legal work. The responsive

documents were ultimately located by another federal agency in connection with a separate

FOIA request, and plaintiff was promptly notified. (Tr. of Status. Conf., March 4, 2015, ECF

No. 45, at 7:4–11.) It was not until the records were located that plaintiff could begin seeking

disclosure of the individual documents that the Court ultimately ordered the government to

release. Thus, the Court finds that plaintiff should not recover for any of the legal work

performed prior to June 30, 2014.

### B. Work Performed Between June 30, 2014, and February 17, 2016

Next, the government argues that plaintiff should recover no more than 20% of the legal

fees incurred between June 30, 2014, and February 17, 2016. (Def.'s Opp'n at 13.) Plaintiff

argues that he should recover 35% of the fees incurred between June 30, 2014, and November 4,

2015 ($39,025.00) and 90% of the fees incurred between November 5, 2015, and February 17,

2016 ($26,001.00). (*See* Pl.'s Mot. at 14.)[5] As explained below, the Court finds that plaintiff is

---

[5] Plaintiff's request is equivalent to approximately 46% of the fees incurred between June 30, 2014, and February 17, 2016: plaintiff's fees in that time period total $140,390.00, and he requests an award of $65,026.00 of those fees. (*See* Ex. D, Pl's Mot.)

entitled to recover only 30% of his legal fees incurred during the period from June 30, 2014, to February 17, 2016.[6]

In June 2014, the government notified plaintiff that it had located the disciplinary file. As a result, the D.C. Circuit dismissed plaintiff's appeal, and the matter was remanded to this Court for further proceedings. Thereafter, the Court ordered the government to produce over 2,000 unredacted pages and over 1,000 partially redacted pages of the disciplinary file. In particular, following the November 4, 2015 hearing, the Court ordered the government to "disclose to plaintiff . . . any public documents contained in the exhibits to the disciplinary file, with the exception of any Speedy Trial Act waivers." (Minute Order, Nov. 4, 2015). On the basis of that Order, the government produced 724 unredacted pages of documents. (*See* Pl.'s Mot. at 9.) On January 5, 2016, the Court rejected the government's *Morgan* claims for withholding court documents that had been filed under seal and ordered the government to "produce all withheld court records to plaintiff." (Order, Jan. 5, 2016.) The government subsequently released 84 previously sealed court documents and 1,114 additional pages of unredacted public documents. (*See* Pl.'s Mot. at 9.) Finally, on February 17, 2016, the Court ordered the government to produce a new *Vaughn* index and to "conduct a diligent segregability

---

[6] Beyond "conced[ing] that a reduction in the lodestar is appropriate in light of the fact that the Government prevailed on the documents that were submitted *in camera* and in light of [plaintiff's] high private interest in the documents at issue," plaintiff does not explain why he believes 35% is an appropriate recovery before the November 4, 2015 hearing or why he believes 90% is an appropriate recovery thereafter. (*See* Pl.'s Mot. at 14.) Notwithstanding plaintiff's assertion that he deserves to recover a higher percentage of fees after the November 2015 hearing, the Court cannot find a credible reason in the record for this distinction, and therefore it finds that plaintiff is entitled to recover a uniform percentage of the fees for the entire time period of June 30, 2014, to February 17, 2016. Although the Court ordered the government to produce documents only after the November 4, 2015 hearing, plaintiff's legal work that resulted in the release of documents and the government's obdurate behavior that prolonged the litigation occurred both before and after the November 4, 2015 hearing.

review and disclose . . . whatever portion of the requested documents can be reasonably segregated from the withheld material." (Order, Feb. 17, 2016.)  In response, the government produced 1,013 partially redacted pages and 197 unredacted pages of documents that had previously been withheld. (*See* Pl.'s Mot. at 9.)

While these released released did not serve the public interest, the government's obduracy during this time period protracted the litigation and resulted in plaintiff's attorneys billing over 500 hours during this time period. (*See* Ex. D, Pl.'s Mot.)  The government acknowledges that it should have released the public documents and performed the segregability review that the Court ultimately had to order. (Def.'s Opp'n at 10.)  The government further acknowledges, in what can only be charitably viewed as an understatement, that its "delay in producing documents may have prolonged the litigation." (*Id*.)

Indeed, the government refused to produce any documents after the disciplinary file was located, and its first attempt at a *Vaughn* index was "useless, deficient," and "[a] complete waste of . . . time." (Tr. of Nov. 4, 2016 Hearing, ECF No. 81, at 7.)  After the Court ordered that certain documents be sent to the Judge presiding over plaintiff's California state criminal proceedings, the government unsuccessfully (and unnecessarily) sought clarification of that Order, based on its purported confusion about whether this Court would "retain full control over the documents." (Def.'s Mot. to Clarify, Nov. 30, 2015, ECF No. 84.)  Moreover, even after the Court ordered the government to produce to plaintiff the public documents contained within the disciplinary file, the government continued to withhold court documents that had been filed under seal some twenty years earlier.  The Court later rejected the government's baseless *Morgan* claims. (Order, Jan. 5, 2016, at 2.)  Had the government simply turned over the public documents, performed the segregability review, and created a legally sufficient *Vaughn* index,

this lawsuit could have been resolved with far fewer than the over 500 hours plaintiff's attorneys spent during this time period.

However, plaintiff's success here was not "proportional to the efforts expended by counsel," and the award plaintiff has requested is therefore "excessive." *See George Hyman Const.*, 963 F.2d at 1535. Plaintiff concedes that he did not prevail on the release of the 35-page disciplinary letter or on the documents that the government continued to withhold at the end of the litigation. Further, as the government points out, the bulk of plaintiff's legal work was spent on issues on which plaintiff did not prevail. For instance, plaintiff devoted approximately one page of his 22-page motion for summary judgment to his argument that the public documents from the disciplinary file should be released. (*See* Pl.'s Mot. for Summ. J., May 26, 2015, ECF No. 57, at 22–23.) The Court agreed that the government should release those public documents. (Order, Nov. 16, 2015.) It, however, was not persuaded by the reasoning of the other 21 pages of plaintiff's arguments in his first motion for summary judgment.

Plaintiff also spent time raising unproductive and unnecessary issues during this time period. For instance, even after the Court had announced its ruling as to the 35-page disciplinary letter in two separate hearings, plaintiff suggested that the ruling was merely "tentative," requiring this Court to issue a Memorandum Opinion to "dispel any further doubt." (Mem. Op., Feb. 5, 2016, at 3.) Plaintiff also moved for a new *Vaughn* index, even though the Court proposed–and the parties agreed–that plaintiff would forego the index in exchange for the disclosure of previously withheld public documents and the transmission of certain documents to Judge Rappe in California. (*See* Order, Feb. 17, 2017.)[7] However, that unproductive legal work

---

[7] The government, however, did not oppose production of the *Vaughn* index, so the Court ultimately granted the motion. (Order, Feb. 17, 2016.)

would be nearly impossible to excise from plaintiff's billing records, as they were lumped together with plaintiff's successful motion for a segregability review. (*See* Pl.'s Mot. for *Vaughn* Index & Segregability Review, Jan. 25, 2016, ECF No. 105.) On the basis of plaintiff's limited success, the Court finds that a reduction of 33% is appropriate.

A further wholesale reduction in the fee award is justified by the duplication of attorney efforts in this matter. It was unnecessary for plaintiff to have three attorneys working simultaneously on his case, especially where all three attorneys attended hearings and consulted on each court filing. Given that the legal issues were not particularly complex, one attorney well versed in FOIA litigation could have adequately represented plaintiff in this matter. Using the November 4, 2015 hearing as an example, the duplicative billing is clear: Torrence Lewis billed nearly 20 hours to prepare for the hearing and 12 hours to travel to and attend the hearing. (*See* Ex. D., Pl.'s Mot.) Howard Anderson billed over 10 hours for the same, even though he did not speak on the record at the hearing. (*See id.*; Tr. of Nov. 4, 2015 Hearing.) Scott Hodes billed two hours for attending the hearing but, like Mr. Anderson, did not actively participate in the proceedings in any way. Accordingly, an additional 33% reduction is appropriate to account for the duplication of attorney efforts.

Plaintiff's attorneys' improper billing techniques also justify a lower recovery. Both Howard Anderson and Torrence Lewis submitted bills for travel time at 100% of their normal hourly rate, and Torrence Lewis engaged in block billing. (*See, e.g.*, Ex. D, Pl.'s Mot., (billing 12 hours on Nov. 4, 2015, for "DC motions hearing; preparation and appearance (travel); consultation with co-counsel and client regarding same").) "[I]n this Circuit, travel time is compensated at half of the attorney's rate," and it was therefore improper to bill travel time at 100% of the attorney's rate. *McAllister v. Dist. of Columbia*, 21 F. Supp. 3d 94, 106 (D.D.C.

2014).  However, many of the travel entries are block billed, making specific reductions more difficult.  Block billing involves lumping multiple tasks into a single time entry, which can "mak[e] it impossible to evaluate their reasonableness."  *See Brownlee*, 353 F.3d at 971.  While block billing is not "prohibit[ed]," courts often reduce fee awards as a result of it.  *See id.*; *Bennett v. Castro*, 74 F. Supp. 3d 382, 406 (D.D.C. 2014); *In re InPhonic, Inc.*, 674 F. Supp. 2d 273, 289 (D.D.C. 2009); *Summers v. Howard Univ.*, 2006 WL 751316, at *7 (D.D.C. Mar. 20, 2006).  Even if tasks are adequately described, there is simply no way for the Court to assess whether the time spent on each of those tasks was reasonable or to make reductions to certain activities, like travel, when the tasks are lumped together.  *See Brownlee*, 353 F.3d at 970 (the court must "determine with a high degree of certainty that such hours were actually and reasonably expended" (quoting *In re Olson*, 884 F.2d 1415, 1428 (D.C. Cir. 1989))).  Thus, given the difficulty of disambiguating the block billed entries either to reduce travel-time recovery or to evaluate the reasonableness of the entries themselves, the Court will reduce plaintiff's recovery by an additional 4%.

In sum, while the government's proposal of awarding 20% of plaintiff's fees during this time period would understate the degree of plaintiff's success and would almost amount to a free pass for the government's obdurate behavior, plaintiff's proposed award significantly overstates his success, especially given the fact that the documents that were properly withheld were of far greater importance than the thousands of pages that were produced.  For the aforementioned reasons, after reducing the award by 70% (33% for limited success, 33% for duplicative efforts, and 4% for improper billing techniques), the Court will award 30% of plaintiff's attorney's fees incurred between June 30, 2014, and February 17, 2016.  *See Fox v. Vice*, 563 U.S. 826, 838

(2011) ("The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.")

### C. Work Performed After February 17, 2016

Finally, the government argues that plaintiff should not recover any fees for legal work performed after February 17, 2016. (Def.'s Opp'n at 13.) During this time period, the parties filed final cross-motions for summary judgment, and plaintiff filed an unsuccessful Motion to Alter Judgment. Plaintiff did not prevail on any issue after the Court ordered the government to disclose any segregable portions of the documents at issue on February 17, 2016. (*See id.*) Nor does plaintiff identify any issues on which he substantially prevailed after February 17, 2016. (*See* Pl.'s Mot. at 9). With the exception of work performed preparing plaintiff's fee petition, the Court therefore agrees with the government that plaintiff is not entitled to fees for legal work performed after this date.

The government prevailed on the parties' final cross-motions for summary judgment, as the Court found that it had properly withheld the remaining documents. (Mem. Op., July 19, 2016, at 7.) Further, plaintiff did not prevail on his Motion to Alter Judgment, which argued that the Court's July 19, 2016 Order dismissing the case failed to satisfy Rule 58(a)'s "separate document" requirement. (Order, Aug. 12, 2016.) The legal work on the final summary judgment motion and plaintiff's Motion to Alter Judgment can be reasonably separated from the legal work on which he prevailed. Accordingly, the Court will not award fees for legal work performed after February 17, 2016, except for time spent preparing the present Motion for Attorney's Fees.

### D. Fees on Fees

The government's arguments for fee reductions do not address plaintiff's entitlement to "fees on fees"—the time spent preparing the fee petition–even though that legal work occurred after February 17, 2016. (*See* Pl.'s Reply at 5–6.) Plaintiff requests an award of $4,050.00, 90% of the fees incurred as a result of the 17.5 hours spent preparing his Motion for Attorney's Fees and Reply Brief. (*See* Ex. D, Pl.'s Mot.; Pl.'s Reply at 6 n.2.) As with plaintiff's period of successful legal work, the Court will award 30% of plaintiff's "fees on fees." *See EPIC*, 982 F. Supp. 2d at 61 (reducing the award of "fees on fees" work to the same extent the award for merits work was reduced.)

The Court notes that the hours expended on the fee petition are overstated by the duplication of efforts that justified a uniform reduction of plaintiff's other fees. Torrence Lewis billed 6.5 hours at $350 per hour ($2,275 total) for producing a time table. (*See* Ex. D, Pl.'s Mot.) This was more than twice the amount of time that Howard Anderson billed for drafting the memorandum in support of the motion itself, and more than four times the amount of time that Scott Hodes spent compiling his time table. Mr. Lewis employed paralegals who would have been more than capable of compiling the time tables of hours at a significantly lower hourly rate.

### CONCLUSION

Accordingly, plaintiff's motion for attorney's fees and costs will be **GRANTED IN PART AND DENIED IN PART**. Plaintiff will be awarded $43,617.00 in fees and $1,901.23 in costs, for a total recovery of $45,518.23. A separate Order accompanies this Memorandum Opinion.

/s/ *Ellen Segal Huvelle*
ELLEN SEGAL HUVELLE
United States District Judge

Date: May 25, 2017